FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JASON ALEXANDER YEGGE,                )
                                      )
            Appellant,                )
                                      )
v.                                    )          Case No. 2D12-4193
                                      )
STATE OF FLORIDA,                     )
                                      )
            Appellee.                 )
_____)

Opinion filed April 15, 2015.

Appeal from the Circuit Court for Pinellas
County; Richard A. Luce, Judge.

Howard L. Dimmig, II, Public Defender, and
Alisa Smith, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Dawn A. Tiffin, Assistant
Attorney General, Tampa, for Appellee.


PER CURIAM.

Jason Alexander Yegge appeals the sentence he received on remand

after his partially successful appeal from the denial of his Florida Rule of Criminal

Procedure 3.800(a) motion to correct an illegal sentence.  He argues that his ten-year

mandatory minimum sentence for the offense of armed burglary is illegal because

youthful offenders are not subject to mandatory minimum sentencing, even after committing a substantive violation of probation. Because Yegge's ten-year mandatory minimum sentence is not illegal, despite his youthful offender status, we disagree and affirm Yegge's mandatory minimum sentence.

In 2003, Yegge pleaded guilty to armed burglary, manufacture of marijuana, and misdemeanor possession of drug paraphernalia. The trial court withheld adjudication and sentenced Yegge as a youthful offender to drug offender probation for the burglary and manufacture charges. The court adjudicated Yegge guilty and sentenced him to time served for the paraphernalia charge. In 2005, after having twice been restored to probation following violations for possessing drugs, Yegge admitted to violating his probation by committing the criminal offenses of possession of a controlled substance and introduction of contraband into a county detention facility. The court revoked Yegge's probation and youthful offender designation, adjudicated him guilty, and sentenced him to a ten-year mandatory minimum term pursuant to section 775.087, Florida Statutes (2002), for armed burglary and to five years' prison for manufacture of marijuana.

Yegge subsequently challenged the trial court's revocation of his youthful offender status in a rule 3.800(a) motion to correct illegal sentence. This court reversed the postconviction court's order denying relief and remanded for the circuit court to amend Yegge's sentence to reflect his youthful offender classification. We expressly affirmed Yegge's ten-year mandatory minimum sentence. See Yegge v. State, 88 So. 3d 1058, 1059 (Fla. 2d DCA 2012) ("The maximum sentence for Yegge's original offense, armed burglary, is life in prison. Therefore, Yegge's ten-year mandatory

minimum was not illegal." (citation omitted)).  On remand, the circuit court resentenced Yegge as a youthful offender but did not alter his ten-year mandatory minimum sentence.  On appeal, Yegge argues that his ten-year mandatory minimum sentence is illegal because sentencing enhancements do not apply to youthful offender sentences.  We disagree.

Once Yegge violated probation or community control, he was resentenced in accordance with section 958.14, Florida Statutes (2002) (emphasis supplied), which provides:

> <u>A violation or alleged violation of probation or the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06.</u>  However, no youthful offender shall be committed to the custody of the department for a substantive violation for a period longer than the maximum sentence for the offense for which he or she was found guilty, with credit for time served while incarcerated, or for a technical or nonsubstantive violation for a period longer than 6 years or for a period longer than the maximum sentence for the offense for which he or she was found guilty, whichever is less, with credit for time served while incarcerated.

In our view, this unqualified statement of the sanctions to which a youthful offender who commits a substantive violation is exposed reflects the legislature's intent that such offenders lose the benefit of the original sentencing limitations of the Youthful Offender Act.  To understand the full import of the first sentence of this statute, some statutory history is helpful.  When section 958.14 was enacted in 1978, it provided simply that "[a] violation or alleged violation of probation or the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06(1). . . ."  Ch. 78-84, § 14, at 123, Laws of Fla.  In 1985, the legislature modified this sentence as follows:

Provided that, no youthful offender shall be committed to the custody of the department for such violation for a period longer than 6 years or for a period longer than the maximum sentence for the offense for which he was found guilty, whichever is less, with credit for time served while incarcerated.

Ch. 85-288, § 24, at 1821, Laws of Fla. And again in 1990, the legislature further amended the second sentence to apply the six-year cap only to technical, not substantive, violations of probation. See § 958.14, Fla. Stat. (Supp. 1990), amended by ch. 90–208, § 19, at 1161, Laws of Fla.; see also Shultz v. State, 136 So. 3d 1232, 1234 (Fla. 2d DCA 2014). The statute has remained substantively unchanged since then, including the statute relevant here.

It is widely accepted that youthful offenders maintain their "youthful offender status" after violating probation or community control. See Lee v. State, 67 So. 3d 1199, 1202 (Fla. 2d DCA 2011); accord Smith v. State, 143 So. 3d 1023, 1024-25 (Fla. 4th DCA 2014); Jacques v. State, 95 So. 3d 419, 420 (Fla. 3d DCA 2012); Christian v. State, 84 So. 3d 437, 441-42 (Fla. 5th DCA 2012); Hudson v. State, 989 So. 2d 725, 726 (Fla. 1st DCA 2008). As we explained in Yegge, "[a] youthful offender designation carries benefits—including the availability of programs and facilities, and, though Yegge may not qualify, eligibility for early release—within the criminal justice system." 88 So. 3d at 1060; see also Christian, 84 So. 3d at 443. However, although the trial court must continue a youthful offender's status after a substantive violation of probation or community control, the trial court is not precluded from imposing an enhanced sentence under the Youthful Offender Act.

"The intent of the legislature should be derived from the plain language of the statute in question." State v. Watts, 558 So. 2d 994, 997 (Fla. 1990). A plain

reading of section 958.14 leads to the conclusion that the sentencing limitations contained in section 958.04, which preclude sentencing enhancements, do not apply to a sentence imposed after a substantive violation of probation or community control. Section 958.14 states that a violation of probation shall subject the youthful offender to sentencing under the general violation statute, section 948.06, which states that on revocation of probation or community control the court "shall . . . impose any sentence which it might have originally imposed before placing the probationer on probation or the offender into community control." § 948.06(1), Fla. Stat. (2002) (emphasis added). This language is mandatory.

Although youthful offenders who commit technical violations of probation or community control retain the benefit of the six-year sentencing cap, youthful offenders who commit a substantive violation may be sentenced to "the maximum sentence for the offense for which he or she was found guilty." § 958.14. A defendant's maximum exposure in a criminal case is controlled by the charging document. Yegge was charged with armed burglary and the information alleged that he was armed or became armed with a firearm. After Yegge pleaded guilty to armed burglary, his maximum sentence was controlled by sections 810.02(2)(b) and 775.087(2)(a)(1)(d), Florida Statutes (2002), and the guidelines in effect at the time of his offense. Once a youthful offender violates probation, he is sentenced according to section 958.14, which states that a youthful offender who commits a substantive violation is exposed to the maximum sentence for his original offense. A defendant's maximum sentence for his original offense necessarily includes any enhancements for which he qualifies. See Mendenhall v. State, 48 So. 3d 740, 750 (Fla. 2010) ("We thus conclude that under

section 775.087(2)(a)(3), the trial court has discretion to impose a mandatory minimum within the range of twenty-five years to life. Consequently, we conclude that Mendenhall was properly sentenced to thirty-five years with a thirty-five-year mandatory minimum, notwithstanding the statutory maximum of thirty years contained in section 775.082 for Mendenhall's offense."); Lareau v. State, 573 So. 2d 813, 815 (Fla. 1991) (explaining that the defendant's "maximum guideline sentence" included the section 775.087(1), Florida Statutes (1985), enhancement). Nothing in section 958.14 suggests that a sentence imposed after a substantive violation is limited by the other qualifiers of section 958.04. Imposing a mandatory minimum on a youthful offender sentence does not equate with removing a defendant's youthful offender status.

Yegge, however, relies on State v. Arnette, 604 So. 2d 482 (Fla. 1992), for the proposition that "[u]nless the legislature clearly states otherwise, youthful offenders maintain youthful offender status even when they violate a condition of community control." Id. at 484. In Arnette, the Florida Supreme Court considered the application of the six-year cap to a youthful offender who committed a substantive violation of community control in 1984. In holding that the cap does apply to youthful offenders sentenced after a violation of probation or community control under the pre-1985 version of the statute, the court concluded that the 1985 amendment was evidence of the legislature's prior intent "to limit penalties against youthful offenders to six years." Id. The Arnette decision does not address the application of mandatory minimums to youthful offender sentences and is thus limited to the application of the sentencing cap; as noted above, in 1990 the legislature amended that cap to apply to technical

- 6 -

violations only. Arnette simply does not support application of the sentencing limitations of section 958.04 to a youthful offender following a substantive violation of probation.

We recognize that the Fourth District has expressed a view contrary to ours and held that drug trafficking mandatory minimum sentences cannot be imposed on a youthful offender who substantively violates probation. See Blacker v. State, 49 So. 3d 785, 789 (Fla. 4th DCA 2010) ("Because [the defendant] maintains his youthful offender status, the minimum mandatory penalties do not apply."). To support its holding, the Fourth District cited Mendez v. State, 835 So. 2d 348 (Fla. 4th DCA 2003), and Jones v. State, 588 So. 2d 73 (Fla. 4th DCA 1991). However, both Mendez and Jones address initial youthful offender sentencing under section 958.04, not postviolation sentencing under section 958.14. Moreover, in Goldwire v. State, 73 So. 3d 844 (Fla. 4th DCA 2011), the Fourth District held that the trial court has discretion to impose a non-youthful offender sentence after a substantive violation of probation and specifically noted that "the trial court is not required to impose the minimum mandatory sentence, but instead, is able to do so when exercising its discretion, dependent upon the circumstances of the case." Id. at 846.

Similarly, the special concurrence relies on State v. Wooten, 782 So. 2d 408 (Fla. 2d DCA 2001), to support its conclusion that Yegge's youthful offender designation "trumped the otherwise mandatory 10/20/Life statute and removed the possibility of enhancing his sentence with a ten-year minimum mandatory." However, because the issue in Wooten was whether the 10/20/Life Statute could be applied to a youthful offender's initial sentence, its reasoning is not relevant to Yegge's appeal from a postviolation sentence. Section 958.14 does not extend the sentencing limitations of

- 7 -

section 958.04 to youthful offenders who substantively violate supervision. This follows from our understanding that youthful offenders do not receive the benefit of the sentencing cap based on being repeat offenders.

In this case, the trial court properly exercised its discretion to impose the mandatory minimum sentence for Yegge's armed burglary offense after he committed a substantive violation of probation. We agree with the analysis in Goldwire. To the extent that our decision conflicts with Blacker, we certify conflict.

Affirmed.


WALLACE and CRENSHAW, JJ., Concur.
DAVIS, CHARLES A., SENIOR JUDGE, Concurs specially with opinion.

DAVIS, Senior Judge, Specially concurring.

Because in Yegge v. State, 88 So. 3d 1058, 1059-60 (Fla. 2d DCA 2012), this court held that Yegge's ten-year sentence—including the 10/20/Life minimum mandatory enhancement—is legal, I must concur with the majority opinion. However, it is my opinion that because Yegge maintained his youthful offender status when he was resentenced on remand, the 10/20/Life sentencing enhancement statute, section 775.087(2), does not apply to this new sentence.[1] Accordingly, it is my belief that this court should recede from Yegge, 88 So. 3d 1058, reverse Yegge's sentence, and remand this case with instructions that Yegge be resentenced as a youthful offender to a term within the statutory maximum that does not include the 10/20/Life enhancement.

When this court reversed the denial of Yegge's rule 3.800(a) motion, we concluded "that the sentencing court must maintain the defendant's youthful offender status upon resentencing for a violation of probation even when the violation [i]s substantive." Yegge, 88 So. 3d at 1059-60. However, this court denied Yegge's additionally requested relief regarding the minimum mandatory enhancement to Yegge's sentence, observing that "[a] youthful offender who commits a substantive violation of probation can be sentenced to the maximum sentence allowable for the original offense" and that "the six-year limitation applicable to youthful offender sentences no longer applies." Id. at 1059 (emphasis omitted) (citing § 958.14, Fla. Stat. (2007), which provides that "no youthful offender shall be committed to the custody of the department

---

[1]See generally Young v. State, 86 So. 3d 541, 543 (Fla. 2d DCA 2012) (recognizing section 775.087(2) to be an enhancement statute by noting that "in order for a court to enhance a defendant's sentence based on section 775.087(2), the grounds for the enhancement must be clearly charged in the information").

for a substantive violation for a period longer than the maximum sentence for the offense for which he or she was found guilty").  Accordingly, this court concluded that because the maximum sentence for armed burglary under section 810.02(2)(b), Florida Statutes (2002), is life and the six-year cap for the originally imposed youthful offender sentence under section 958.04 no longer applied, Yegge's ten-year sentence, including the minimum mandatory designation, was within the allowable sentencing range and was legal.  88 So. 3d at 1059.  This court did not, however, specifically consider that imposing the minimum mandatory against Yegge required the additional application of the 10/20/Life sentencing enhancement to a youthful offender sentence.  Instead, we reversed the postconviction court's order and remanded solely "for amendment of Yegge's sentence to reflect his youthful offender classification."  Id. at 1060.

On remand, the trial court resentenced Yegge by reinstating his youthful offender status and leaving his ten-year sentence, including the 10/20/Life minimum mandatory enhancement, intact.  Although this is in keeping with the holding of Yegge, I conclude that such constitutes an illegal sentence because 10/20/Life sentencing enhancements do not apply to youthful offender sentences.

Initially, I note that this court has held that sentencing enhancements pursuant to section 775.087(2) do not apply to youthful offender sentences at the time of original sentencing.  In Wooten, 782 So. 2d 408, the State challenged Wooten's sentence on direct appeal, arguing that the trial court erred in not applying the 10/20/Life enhancement to the youthful offender sentence imposed.  This court affirmed, concluding that "the 10/20/Life statute contains no language to supersede the youthful offender sentence and . . . that minimum mandatory sentencing is not

applicable when one is sentenced as a youthful offender." Id. at 410. Admittedly, Wooten is factually distinguishable from the instant case in that there the State was challenging Wooten's original youthful offender sentence rather than a sentence imposed after a substantive violation of probation. However, the clear holding of the Wooten opinion is that the 10/20/Life enhancement statute does not apply to the original sentence imposed under the Youthful Offender Act. The question before this court in the instant appeal is whether an individual's retention of youthful offender status after a substantive violation of supervision likewise prohibits imposition of the 10/20/Life minimum mandatory. And I conclude that it should.

In doing so, I disagree with the majority's reasoning in three ways. First, the majority dismisses the reasoning in Arnette, 604 So. 2d 482, as limited only to the application of the six-year sentencing cap to resentencing of youthful offenders following a substantive violation of supervision. The majority concludes that Arnette has no application here because the legislature amended the cap in 1990, limiting it to technical violations only. I do recognize that Arnette arose in a different posture than the instant case, but I nevertheless find its reasoning instructive.

In that case, at Arnette's original sentencing in 1981 on a charge of burglary, the trial court designated him to be a youthful offender and imposed a split sentence of four years' prison and two years' community control. He then violated the conditions of his community control in 1984, and the sentencing court resentenced him to life in prison. The Fifth District vacated the life sentence, concluding that it was illegal. Arnette v. State, 566 So. 2d 1369, 1373 (Fla. 5th DCA 1990). On review, the Florida Supreme Court noted that at the time of Arnette's resentencing,

- 11 -

section 958.14, Florida Statues (1983), read: "A violation or alleged violation of the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06(1)." Subsection 948.06(1), Florida Statutes (1983), provided that, if community control is revoked because of a violation, the court may "impose any sentence which it might have originally imposed before placing the probationer or offender on probation or into community control." Thus, we must determine what sentence the trial judge could have imposed on Arnette originally.

604 So. 2d at 483. In answering that question, the supreme court specifically addressed a 1985 amendment to section 958.14 by which the legislature added the provision that "no youthful offender shall be committed to the custody of the department for such violation for a period longer than [six] years or for a period longer than the maximum sentence for the offense for which he was found guilty, whichever is less." See 604 So. 2d at 484. The court interpreted this language to be "a declaration of [the legislature's] prior intent" and observed as follows:

It has always been clear that the legislature intended to treat youthful offenders differently than adults. Unless the legislature clearly states otherwise, youthful offenders maintain youthful offender status even when they violate a condition of community control. Section 958.14 did not specifically authorize applying adult sanctions to a youthful offender, and now we perceive the legislature's intent to have been to limit penalties against youthful offenders to six years.

Id. (emphasis added). Thus, the court affirmed the decision of the Fifth District to vacate Mr. Arnette's life sentence and "authorize[d] a total of six years' imprisonment." Id.

As the majority points out, in 1990, the legislature again amended section 958.14, changing the second sentence of the statute to read as follows:

- 12 -

However, no youthful offender shall be committed to the custody of the department for a substantive violation for a period longer than the maximum sentence for the offense for which he or she was found guilty . . . or for a technical or nonsubstantive violation for a period longer than [six] years or for a period longer than the maximum sentence for the offense for which he or she was found guilty, whichever is less . . . .

I agree that this amendment establishes the legislature's intent to remove the six-year cap for youthful offender sentences following substantive violations of probation. But the balance of the section was left unchanged. Therefore, both the pre-1990 version of section 958.14—which was at issue in <u>Arnette</u>—and the post-1990 version of section 958.14—at issue here—state in the first sentence that "[a] violation or alleged violation of probation or the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06(1)."

In <u>Arnette</u>, the supreme court concluded that this language in section 958.14 should not be considered as the legislature's statement that every conceivable adult sanction should be available upon resentencing youthful offenders for violations of probation without limitation. 604 So. 2d at 484 ("Section 958.14 did not specifically authorize applying adult sanctions to a youthful offender."). And although subsequent amendments have expanded the range of postviolation youthful offender sentencing options beyond those available under the version of section 958.14 applicable in <u>Arnette</u>, I see nothing in the post-<u>Arnette</u> amendments to section 958.14 that changes this conclusion or authorizes the limitless application of section 948.06(1) to youthful offender sentences following a substantive violation. The post-<u>Arnette</u> amendment merely altered the scope of the youthful offender limitations according to the

- 13 -

seriousness of the violation of supervision. Accordingly, I conclude that <u>Arnette</u> applies and supports a reversal in this case.

I also disagree with the majority's assessment that the first line of section 958.14 is an "unqualified" directive that upon a substantive violation of supervision youthful offenders are to be resentenced only pursuant to section 948.06(1). In my opinion, this language most certainly has been qualified—both by case law requiring that a youthful offender designation be retained upon resentencing after a violation of probation, <u>see, e.g.</u>, <u>Vantine v. State</u>, 66 So. 3d 350, 352 (Fla. 2d DCA 2011), and more pointedly by the second sentence of section 958.14, which requires that "no youthful offender shall be" resentenced "for a substantive violation for a period longer than the <u>maximum sentence for the offense for which he or she was found guilty</u>." (Emphasis added.) The first sentence of section 958.14 serves to sever the restraints of the original youthful offender sentencing caps of section 958.04(2), but the second sentence dictates the boundaries for resentencing after substantive violation.

It is the interpretation of the phrase "maximum sentence for the offense for which he or she was found guilty" in the second sentence that brings me to my final disagreement with the majority's opinion. The majority correctly states that the youthful offender who is found to have committed a substantive violation of supervision is subject to this section 958.14 language. But the majority then concludes that "a defendant's <u>maximum exposure</u> in a criminal case is controlled by the charging document." (Emphasis added.) It is with this language that I disagree because "the maximum sentence for the offense" is not necessarily synonymous with "a defendant's

- 14 -

maximum exposure in a criminal case."[2]  The maximum sentence for an offense is determined by the legislature via statute.  But a defendant's maximum exposure is determined by the statutory maximum sentence combined with other specific factors as related to the particular defendant or the specific circumstances of the commission of the offense.  See, e.g., §§ 775.082(9)(a), .084, .087.

In the instant case, Yegge was adjudicated guilty of an armed burglary, which carries a maximum sentence of life.  Because Yegge's offense involved the use of a firearm, which is not an element of the offense, see § 810.02(2)(b), absent any youthful offender considerations, his maximum exposure would have included the mandatory 10/20/Life enhancement in addition to the statutory maximum life sentence.  Under the circumstances of the instant case, it is clear that the statutory maximum and Yegge's maximum exposure were not the same.

An examination of Yegge's original sentence illustrates why this distinction is important.  At the time of his original conviction and sentence, the trial court's decision to sentence him as a youthful offender was discretionary.  Once the trial court elected to exercise its discretion and sentence Yegge as a youthful offender, that designation trumped the otherwise mandatory 10/20/Life statute and removed the possibility of enhancing his sentence with a ten-year minimum mandatory.  See Bennett v. State, 24 So. 3d 693, 694 (Fla. 1st DCA 2009); see also State v. Drury, 829 So. 2d 287 (Fla. 1st DCA 2002).  This is true, and in keeping with the holding of Wooten, 782 So. 2d 408, because "[t]he youthful offender sentencing statute itself expressly provides that the

_____

[2]I would also note that a defendant's maximum exposure is determined by the offenses adjudicated at the time of judgment rather than those charged in the information.

- 15 -

sentencing alternatives prescribed therein are [i]n lieu of other criminal penalties authorized by law." See Holmes v. State, 638 So. 2d 986, 987 (Fla. 1st DCA 1994) (second alteration in the original) (internal quotation marks omitted).

When Yegge then committed a substantive violation of his probation, pursuant to the second sentence of section 958.14, Yegge's new sentence could be no "longer than the maximum sentence for" armed burglary. According to section 810.02(2), the trial court could have sentenced Yegge to life because "[b]urglary is a felony of the first-degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084." (Emphasis added.) Although, section 810.02(2) makes reference to section 775.084, which sets forth sentencing enhancements for violent career criminals, habitual felony offenders, and habitual violent felony offenders, the burglary statute contains no additional reference to the availability of a minimum mandatory sentencing enhancement pursuant to section 775.087.[3] As such, upon resentencing of Yegge, the trial court exceeded the scope of section 958.14 by imposing the 10/20/Life minimum mandatory enhancement to his ten-year sentence.

Furthermore, in my opinion, the holdings in Mendenhall, 48 So. 3d at 750, and Lareau, 573 So. 2d at 815, which are cited by the majority to support its conclusion that the maximum sentence for the original offense includes 10/20/Life enhancements, are inapplicable to the instant case because they are distinguishable. First, neither Mendenhall nor Lareau was sentenced as a youthful offender, and the sentences at

_____

[3]Cf. Polite v. State, 973 So. 2d 1107, 1115 (Fla. 2007) ("[W]e have applied the principle that the [l]egislature knows how to accomplish what it has omitted in a provision, in construing related statutes." (internal quotation marks omitted)).

- 16 -

issue in those cases were original sentences, not ones imposed upon revocation of probation. Furthermore, the specific issue in Mendenhall was

> whether the mandated "minimum term of imprisonment of not less than [twenty-five] years and not more than a term of imprisonment of life in prison" under section 775.087(2)(a)(3) gives the trial court the discretion to impose a sentence anywhere within the range of twenty-five years to life, even if that sentence exceeds the statutory maximum of thirty years provided for under section 775.082(2)(c).

48 So. 3d at 745. That case in no way addressed whether section 775.087(2) enhancements are part of the statutory maximum sentences a youthful offender might face upon resentencing after a substantive violation of supervision.

Lareau is also factually distinguishable because the three-year minimum mandatory applied in that case was part of a plea bargain to which Lareau agreed. Additionally, Lareau addressed the application of section 775.087(1), Florida Statutes (1985), which is a reclassification statute. The "consequential enhancement of penalties" referred to in Lareau are increased penalties based on the reclassification of the degree of the offense. 573 So. 2d at 815. Such reclassification is not an enhancement to the sentence like a 10/20/Life minimum mandatory, but rather it is an increase in the severity of the offense itself. Furthermore, reclassification is not an issue in the instant appeal. Finally, the version of section 775.087 at issue in Lareau did not include the 10/20/Life enhancements at issue here because this provision was not enacted until 1999. See ch. 99-12, § 1, at 538-42, Laws of Fla.

Because this court is not receding from Yegge, 88 So. 3d 1058, I must concur in the result of the majority. However, for the reasons I have discussed, I would recede from this court's opinion in Yegge to the extent that it affirms the application of

- 17 -

the 10/20/Life sentencing enhancement to a youthful offender sentence and would remand for resentencing of Yegge as a youthful offender to a term within the statutory maximum but not to include the 10/20/Life enhancements.

I would also note that the Fourth District has recently taken the contradictory position that upon resentencing for a substantive violation of supervision by a youthful offender, the trial court has the discretion to impose a non-youthful offender sentence, for which an offense using a firearm would necessarily include the application of the 10/20/Life minimum mandatory enhancement. See Goldwire v. State, 73 So. 3d 844 (Fla. 4th DCA 2011). As such, in reversing to recede from Yegge, I also would certify conflict with Goldwire, 73 So. 3d 844, on this issue.